IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No 13-cv-00871-RBJ

TERRELL P. RODDY, SR.,

    Plaintiff,

v.

ROSEWOOD RESOURCES, INC., a/k/a ROSEWOOD,

    Defendant.

---

ORDER

---

    This matter is before the Court on defendant Rosewood Resources, Inc.'s motion to dismiss and compel arbitration pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [docket #6].

**Facts**

    Terrell Roddy, Sr. was employed by Rosewood from June 2007 until Rosewood terminated his employment on January 3, 2013. During his employment, Mr. Roddy worked as a Healthy Safety and Environment Manager for Rosewood. He was responsible for authoring and implementing a safety manual and overseeing compliance with state and federal requirements for emissions and waste management. Mr. Roddy alleges that Rosewood was very resistant to his recommendations for safety and environmental compliance. In addition to his work at Rosewood, Mr. Roddy also started a business on the side. Mr. Roddy claims that he had permission from Rosewood to start the business, but Rosewood cites the business as grounds for terminating Mr. Roddy. Mr. Roddy disagrees, alleging that he was terminated in retaliation for

his insisting on compliance with state and federal regulations. Following his termination, Mr. Roddy filed this lawsuit on April 4, 2013 alleging six claims for relief: (1) discrimination on account of legal off-duty activities pursuant to C.R.S. § 24-34-402.5; (2) negligent misrepresentation; (3) negligent supervision; (4) promissory estoppel; (5) retaliatory/ wrongful discharge in violation of public policy-state regulations; and (6) retaliatory/ wrongful discharge in violation of public policy.

When Mr. Roddy was hired, he was provided with a copy of Rosewood's "Employee Communication and Dispute Resolution Program (Dispute Program)." The introduction to the Dispute Program provided:

> We understand that even the best employees will have problems, and, at times, disputes that need to be resolved quickly and fairly. It is important to the Company to work out our problems and to return to amicable and productive workplace relationships as soon as possible. In that spirit, we are setting forth this Employee Communication and Dispute Resolution Program, which we believe is an effective and beneficial program for all employees.

Dispute Program at 2. [#6-2]. The Dispute Program described three components: Program Component One – Open Door Discussions, Program Component Two – Review Conference, and Program Component Three – Binding Arbitration (Voluntary). *Id*. Component One – Open Door Discussions describes an environment where employees can talk to their immediate supervisors about any problems they are having. *Id.* If the immediate supervisor is the problem, employees can speak with a more senior manager or the human resources department. *Id.* The Review Conference described in Component Two is an informal meeting between the aggrieved employee and a company representative who is not in the employee's chain of command who has authority to discuss the problem and potential solutions. *Id.* A Review Conference can be requested by completing a review conference request form that is available from the HR department. *Id.* If the review conference does not lead to a satisfactory

2

resolution, either Rosewood or the employee may request mediation. *Id.* Rosewood will pay for a mediator chosen by the American Arbitration Association. *Id.* at 3.

Finally, Component Three – Binding Arbitration (Voluntary) provides, "[i]f your problem or dispute involves a legally protected right, and if you have unsuccessfully attempted resolution through Component Two Review Conference, you or the Company may request arbitration." *Id.* The program goes on to explain, "[w]e want you to understand what this Program option means. You and the Company mutually agree to the resolution by final and binding arbitration of all legal claims or controversies that you may have against the other." *Id.* The program also lists examples of the types of claims that would be covered by the arbitration clause including "tort claims (e.g., negligence, mental anguish)," "unlawful retaliation for filing a claim for benefits, such as workers' compensation benefits or occupational benefit plan benefits, or for refusing to commit an illegal act," and "breach of contract or any other challenges to the 'at-will' status of your employment." *Id.* The handout also explains, "[t]his Program, not the courts, is now your exclusive means for resolving workplace disputes involving legal or statutory rights." *Id.*

On June 25, 2007 Mr. Roddy signed and submitted a "Receipt of Program" to Rosewood. [#6-1]. The Receipt of Program required acknowledgment that Mr. Roddy received a copy of the Employee Communication and Dispute Resolution Program and that he would read the material. The receipt also provided:

> I understand that the arbitration component of the Program is voluntary. If I do not wish to participate in that arbitration component, however, I must deliver a completed Arbitration Opt-Out Form to the President of The Rosewood Corporation . . . . I understand that if I do not complete, deliver, and obtain a receipt for delivery of the Arbitration Opt-Out Form within thirty days of the date on which I received a copy of the Program, I will have agreed to the terms of the Program and will be required to submit any disputes with my employer to binding arbitration pursuant to the Program.

3

Receipt at 1. Mr. Roddy does not allege that he submitted an Arbitration Opt-Out form to Rosewood. Instead he argues that the arbitration clause of the Dispute Program does not apply to him because (1) Rosewood did not follow the Dispute Program at steps one and two and therefore cannot enforce the arbitration agreement at step three and (2) he is no longer an employee at Rosewood.

**Analysis**

Mr. Roddy argues that the arbitration agreement described in the Dispute Program does not prevent him from bringing this lawsuit because Rosewood did not follow the Dispute Program and therefore did not satisfy conditions precedent for the arbitration agreement to be binding. Mr. Roddy argues that Rosewood did not have an open door policy and did not engage in a review conference with Mr. Roddy.

The Supreme Court has long recognized and enforced a "liberal federal policy favoring arbitration agreements." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). Despite this policy, the Supreme Court has also acknowledged that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quoting *Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960)). Therefore, the question whether the parties have submitted a dispute to arbitration — the "question of arbitrability" — is an issue for the courts to decide. *Id.*

Courts have wrestled with what issues should be decided by a court in determining "the question of arbitrability." *See e.g. Howsam,* 537 U.S. at 84, *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543 (1964). Courts have found that it is the province of an arbitrator, not a judge, to determine "procedural questions which grow out of the dispute and bear on the final

4

disposition." *Howsam,* 537 U.S. at 84 (quoting *John Wiley & Sons, Inc.,* 376 U.S. at 557). "The presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Memorial Hospital,* 460 U.S. at 24-25).

For example, in *John Wiley & Sons,* a union sought to enforce the arbitration clause in a collective bargaining agreement against a corporate employer following a merger. 376 U.S. at 544. After determining that the arbitration agreement was binding on the corporation following the merger, the Court was then faced with the issue "whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate have been met." *Id.* Similar to the dispute program currently before this Court, the agreement in *John Wiley & Sons* provided for arbitration as the third step in a three step grievance process. *Id.* at 556. The corporation argued that because steps one and two had not been followed, and the duty to arbitrate did not arise until step three, it had no duty to arbitrate. *Id.* The Court held that this was an issue best left to an arbitrator because answering those "procedural" questions depended on how one answered basic merits issues. *Id.* The Court explained that arguments in response to the corporation's procedural claims were meaningless without the background of the merger and other facts of the case. *Id.*

Similarly, Mr. Roddy's argument that Rosewood failed to follow the dispute program is intertwined with his arguments of Rosewood's retaliation against him. Mr. Roddy's arguments and Rosewood's responses are dependent upon the larger context of the alleged wrong doing. As the Court explained in *John Wiley & Sons*, "[d]oubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration."

*Id.* at 557.  I see no reason to part with this guidance under the facts of this case.  Accordingly, I find that this argument is reserved to the arbitral forum.

Alternatively, Mr. Roddy argues that the arbitration agreement does not apply to him because he is no longer an employee at Rosewood.  To determine whether parties have agreed to submit a particular dispute to arbitration, the Court relies on state law principles governing contract formation.  *Lane v. Urgitus,* 145 P.3d 672, 677 (Colo. 2006).  Under Colorado law, the Court must look at the plain language of the contract and give effect to "the mutual intent of the parties as well as the subject matter and purposes to be accomplished by the agreement."  *Id.*  If ambiguities are found in the arbitration agreement, the Court must "afford the parties a presumption in favor of arbitration and resolve all doubts about the scope of the arbitration clause in favor of arbitration."  *Id.* at 678.  An ambiguity exists if the disputed provision is reasonably susceptible to more than one interpretation.  *Id.*

Mr. Roddy relies on the introduction to the Dispute Program to support his interpretation that the agreement only applies to current employees.  The introduction acknowledges that even the best employees will, at times, have disputes with the company and the goal is to work out problems and return to "amicable and productive workplace relationships as soon as possible."  Dispute Program at 2.  Taken in isolation, this provision could support Mr. Roddy's argument that the program applies only to current employees.  However, other portions of the Dispute Program describe a process that would include claims by former employees based upon actions arising from their employment.  For example, in the arbitration section, the Dispute Program explains: "You and the Company mutually agree to the resolution by final and binding arbitration of all legal claims or controversies that you may have against the other."  Dispute Program at 3.  Similarly, the receipt Mr. Roddy signed acknowledging awareness of this program

6

stated that by consenting to the program, he "agreed to the terms of the Program and will be required to submit any disputes with my employer to binding arbitration pursuant to the program." Receipt at 1.

In *Lane v. Urgitus,* the Colorado Supreme Court analyzed a similar issue. In that case, a term of membership in a realtors' association was that all disputes among members had to be resolved through arbitration. 145 P.3d at 679. A dispute arose concerning a fee arrangement between two members of the association. After the dispute arose, one of the members left the association. In a suit to compel arbitration, the court held that because each party was still a member of the association when the dispute arose, they had not rescinded their consents to arbitrate the dispute. *Id.* at 679-80. Therefore, the court held that the parties were still bound to arbitrate. *Id.* at 680.

In this case, the Dispute Program describes its purpose as cultivating positive employee relationships and seeking to return to amicable and productive workplace relationships. This appears to be targeting current employees. However, other language in the Dispute Program is broader, referring to all disputes between "you" and "the Company." It is possible that this agreement was reasonably susceptible to being understood as only applying to current employees or applying to both current and former employees. Although it is possibly ambiguous, because of the presumption in favor of arbitration, *Volt Info. Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 487-88 (1989), and the Colorado Supreme Court's reasoning in *Lane,* I conclude that this arbitration agreement should still be interpreted broadly enough to compel arbitration with a former employee if the dispute in question arises from the employment relationship with Rosewood. Because Mr. Roddy's complaint arises from his

employment with Rosewood, it must be arbitrated according to the terms described in the Dispute Program.

"Under Colorado law, a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration." *Encore Prods., Inc. v. Promise Keepers,* 53 F. Supp. 2d 1101, 1111 (D. Colo. 1999) (quoting *Lee v. Grandcor Medical Systems, Inc.,* 702 F.Supp. 252, 253 (D.Colo.1988)).

**Order**

Defendant's motion to dismiss with prejudice is GRANTED.

DATED this 16th day of July, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge